UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **RODNEY DOUGLAS QUEEN,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 5:15-cv-01109-MHH |
| } | |
| **CHRISTOPHER COLLIER,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION AND ORDER

In this § 1983 action, plaintiff Rodney Douglas Queen asserts excessive force claims against Officer Christopher Collier under the Fourth and Fourteenth Amendments. Mr. Queen's claims pertain to an incident in which Officer Collier used force on Mr. Queen at the Morgan County Jail. Officer Collier has filed a motion to dismiss Mr. Queen's Fourth Amendment excessive force claim. In the motion, Officer Collier argues that Mr. Queen may not pursue a claim under the Fourth Amendment because Mr. Queen was a pretrial detainee at the time of the incident. For the reasons discussed below, the Court agrees. Mr. Queen may pursue his Fourteenth Amendment claim, but the Court will dismiss his Fourth Amendment claim.

1

## I. STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a court must view the allegations in a complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A court must accept well-pled facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

## II. FACTUAL AND PROCEDURAL BACKRGOUND

On July 17, 2013, officers from the Trinity Police Department stopped the vehicle in which Mr. Queen and two of his friends were riding. (Doc. 1, ¶¶ 3, 4). The officers arrested the driver of the vehicle for driving under the influence of alcohol. (Doc. 1, ¶ 5). After finding alcohol in the passenger area of the vehicle, the officers arrested Mr. Queen and the other passenger for illegal possession of prohibited liquor. (Doc. 1, ¶ 6).

Without incident, the Trinity officers transported Mr. Queen to the Morgan County Jail and released him to the custody of the officers there. (Doc. 1, ¶ 7). In the booking area, Detention Officer Collier assumed custody of Mr. Queen. (Doc.

1, ¶ 12). Officer Collier removed Mr. Queen's handcuffs, patted him down, and removed his personal effects. (Doc. 1, ¶ 12). Officer Collier then escorted Mr. Queen to a holding cell, where Mr. Queen waited for further processing. (Doc. 1, ¶ 12).

Approximately one hour and forty minutes later, Officer Collier removed Mr. Queen from the holding cell to fingerprint and photograph him. (Doc. 1, ¶ 14). During the fingerprinting and photographing process, Officer Collier became agitated with Mr. Queen. (Doc. 1, ¶ 17). Officer Collier placed his right arm around Mr. Queen's neck in a choke-type hold and began to physically force Mr. Queen out of the photographing/fingerprinting area and back toward the holding cell. (Doc. 1, ¶ 20). Officer Collier kept his right arm wrapped tightly around Mr. Queen's neck while applying leverage from Mr. Queen's rear and side. (Doc. 1, ¶ 22). Officer Collier forced Mr. Queen's left arm behind his back and pushed Mr. Queen into an open area leading to the holding cells. (Doc. 1, ¶ 22). Officer Collier then "used his left arm and right foot to immobilize [Mr. Queen's] left leg as he spun him around and slammed him face-first into the concrete floor." (Doc. 1, ¶ 23). As Mr. Queen's face and head hit the floor, Mr. Queen's right arm landed awkwardly, jamming it into his shoulder socket. (Doc. 1, ¶ 23). "Officer Collier, who is considerably larger than [Mr. Queen], rotated his body on top of [Mr.

Queen] and used his entire body weight to drive [Mr. Queen] into the concrete face first." (Doc. 1, ¶ 23).

Officer Collier asked a nearby officer to sound an alarm to summon the assistance of other detention officers. (Doc. 1, ¶ 25). Several other officers responded and jumped on Mr. Queen, pinning him to the floor. (Doc. 1, ¶ 26). "As one officer sat on [Mr. Queen's] legs to immobilize them, [Officer] Collier repositioned himself on top of [Mr. Queen] with his right knee in [Mr. Queen's] back." (Doc. 1, ¶ 26). Officer Collier and the other officers then dragged Mr. Queen by his arms into a holding cell. (Doc. 1, ¶ 26).

"Once in the holding cell, [Mr. Queen] was placed face-down on the floor, and his hands were handcuffed behind his back." (Doc. 1, ¶ 28). One of the blows to Mr. Queen's head caused him to lose consciousness and memory of the events following the impact. (Doc. 1, ¶ 29). Mr. Queen remained on the floor of the holding cell with his hands cuffed behind his back until he regained consciousness and was able to request medical attention. (Doc. 1, ¶ 31).

Mr. Queen saw a nurse at the jail and complained of extreme pain in his right shoulder. (Doc. 1, ¶ 32). In addition, Mr. Queen had a one-inch laceration on the bridge of his nose. (Doc. 1, ¶ 32). Shortly after seeing the nurse, Mr. Queen was released on bond. (Doc. 1, ¶ 32).

After his release, Mr. Queen went to the hospital where he learned that his right shoulder was fractured. (Doc. 1, ¶¶ 33-34). Doctors performed surgery to repair the fracture. (Doc. 1, ¶¶ 36-38). Mr. Queen continues to have pain and limited mobility in his right arm and shoulder as a result of the injuries that he sustained at the Morgan County Jail. (Doc. 1, ¶ 39).

On July 1, 2015, Mr. Queen filed this federal lawsuit against Officer Collier in his individual capacity. (Doc. 1). Mr. Queen asserts two claims against Officer Collier pursuant to 42 U.S.C. § 1983. First, Mr. Queen asserts that while he was an arrestee, Officer Collier deprived him of his Fourth Amendment right to be free from the use of excessive force. Second, Mr. Queen asserts that if his status had changed from an arrestee to a pre-trial detainee by the time of his confrontation with Officer Collier, then Officer Collier deprived him of his Fourteenth Amendment right to due process and to be free from the administration of punishment, physical or otherwise, before being convicted of a criminal offense.

Officer Collier filed a Rule 12(b)(6) motion to dismiss Mr. Queen's Fourth Amendment claim. Officer Collier argues that Mr. Queen "was clearly a pretrial detainee whose excessive force claim is governed not by the Fourth but by the Fourteenth Amendment." (Doc. 14, p. 5). Alternatively, Officer Collier argues that he is entitled to qualified immunity from any § 1983 claims premised upon the Fourth Amendment because "there is no clearly established law that [Mr.] Queen

was an arrestee at the time of the events at issue . . . ." (Doc. 14, p. 2). Officer Collier's motion to dismiss has been fully briefed and is ripe for the Court's consideration. (Docs. 14, 16, 18, 19, 21).

### III. DISCUSSION

A court evaluating a § 1983 claim like Mr. Queen's must first identify the precise constitutional violation charged. *Daniel v. Hancock Cty. Sch. Dist.*, 626 Fed. Appx. 825, 829 (11th Cir. 2015) (citing *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013)). "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest[] . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Garrett v. Athens-Clarke Cty., Ga.*, 378 F.3d 1274, 1279 n. 11 (11th Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 1871 (1989) (emphasis omitted)). On the other hand, if an excessive force "claim arises out of events occurring while [a] plaintiff is a pretrial detainee, the Fourteenth Amendment governs." *Fennell v. Gilstrap*, 559 F.3d 1212, 1215 n. 4 (11th Cir. 2009) (citing *Garrett*, 378 F.3d at 1279 n. 11).

Relying on the Supreme Court's recent decision, *Kingsley v. Hendrickson*, --- U.S. ---, 135 S. Ct. 2466 (2015), Mr. Queen argues that the Court need not decide which constitutional amendment applies to his excessive force claim because a claim under either amendment is measured against an objective reasonableness standard. The Court disagrees. In *Kingsley*, the Supreme Court stated that for a

pretrial detainee to prove an excessive force claim, he must show that the officer's use of force was objectively unreasonable.  Although *Kingsley* provided that excessive force claims under the Fourteenth Amendment are governed by an objective reasonableness standard, the Court did not collapse the standard for arrestee and pretrial detainee excessive force cases into a single standard.  Instead, the *Kingsley* Court stated that in applying the "objectively unreasonable" aspect of the pretrial detainee standard, courts must not only look to *Graham*'s "facts and circumstances" inquiry, but

> also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."

*Kingsley*, 135 S. Ct. at 2473 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).[1]  Therefore, the Court must identify which constitutional standard applies to Mr. Queen's excessive force claim.  *See Daniel*, 626 Fed. Appx. at 829.

In the Eleventh Circuit, "[t]he precise point at which a seizure ends (for purposes of Fourth Amendment coverage) and at which pretrial detention begins

---

[1] *See Graham*, 490 U.S. at 395 ("Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").

[for purposes of Fourteenth Amendment coverage] is not settled . . . ." *Hicks v. Moore*, 422 F.3d 1246, 1254 (11th Cir. 2005). The period of time between an arrest and the beginning of pretrial detention is known as the "twilight zone." *See Stephens v. Butler*, 509 F. Supp. 2d 1098, 1108 (S.D. Ala. 2007). Because Officer Collier's use of force occurred after the arresting officers surrendered Mr. Queen to jail personnel but before detention officers finished the booking process, this case falls squarely in the twilight zone. In twilight zone cases, to identify the applicable constitutional standard, a court must decide whether the force occurred closer to the arrest or the detention end of the spectrum.

Two Eleventh Circuit excessive force cases illustrate this spectrum. The first decision, *Fennell v. Gilstrap*, concerned a plaintiff who police arrested on several misdemeanor charges. 559 F.3d at 1214. While in the arresting officer's squad car, the plaintiff became disruptive and combative, so the officer placed leg restraints on the plaintiff. *Id.* When they arrived at the jail, the arresting officer and other officers brought the plaintiff to a pat-down room. *Id.* The officers placed the plaintiff on the ground because the plaintiff was "combative and uncooperative during the pat down." *Id.* The officers lifted the plaintiff to his feet and then wrestled the plaintiff back to the ground. *Id.* at 1214-15. While on the ground, the plaintiff grabbed an officer's arm and started twisting it. *Id.* at 1215. Hearing the officer's cries, the defendant officer entered the room and attempted to

break the plaintiff's grip by kicking the plaintiff in the arm, but the officer missed and kicked the plaintiff in the face instead. *Id.* The plaintiff brought a section 1983 excessive force claim against the officer who kicked him in the face. *Id.* "The district court understood [the plaintiff's] § 1983 claim to assert a Fourteenth Amendment violation, as the alleged excessive force occurred while he was a pretrial detainee." *Id.* at 1215. The Eleventh Circuit agreed that the Fourteenth Amendment governed the plaintiff's claim. *Id.* at 1215 n. 4 (citing *Garrett*, 378 F.3d at 1279 n. 11).

In the second case, *Garrett v. Athens-Clarke Cty., Ga.*, four police officers tried to arrest a man after he led the officers on a high-speed car chase. 378 F.3d at 1276. The man refused to obey the officers' orders and physically resisted officers' efforts to restrain him. *Id.* at 1276-77. One of the officers instructed another officer to pepper spray the man. *Id.* at 1277-78. The officers then tied the man's ankles together, cuffed his hands behind his back, and strapped his hands and feet together "so that the distance between [the man's] wrists and ankles was fewer than 12 inches, causing his body to be bowed." *Id.* Moments later, an ambulance arrived and found that the man had no pulse. *Id.* In the excessive force action concerning the man's death, the Eleventh Circuit held that "[a]lthough the line is not always clear as to when an arrest ends and pretrial detainment begins," the facts of the *Garrett* case fell on the arrest end of the spectrum. *Id.* at 1279

n. 11. The Court held that "Fourteenth Amendment analysis does not begin until 'after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time.'" *Id.* (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998)).

The *Garrett* and *Fennell* opinions demonstrate that the role of the arresting officer weighs heavily in the constitutional analysis of an arrestee's claim. In this case, the officers who arrested Mr. Queen had surrendered Mr. Queen to the custody of Officer Collier at the Morgan County Jail before the confrontation at issue occurred. Although Mr. Queen had not been fully processed at the jail when Officer Collier restrained him and took him to the ground, Mr. Queen had been in detention for a significant period of time. The force in the instant case occurred almost two hours after Mr. Queen arrived at the jail. (In contrast, the force at issue in *Fennell* occurred just moments after the plaintiff arrived at the jail.) The arrest was over; detention had begun. Considering the foregoing, the Court finds that Mr. Queen was a pretrial detainee at the time of the confrontation with Officer Collier and that the Fourteenth Amendment governs Mr. Queen's excessive force claim.

## IV. CONCLUSION

Because the Fourteenth Amendment governs Mr. Queen's excessive force claim, the Court GRANTS Officer Collier's motion to dismiss (Doc. 13) and DISMISSES WITHOUT PREJUDICE Mr. Queen's Fourth Amendment claim. The Court asks the Clerk to please TERM Doc. 13.

**DONE** and **ORDERED** this July 29, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE